# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **CASSIETTA ROGERS,** | ) |
| PLAINTIFF, | ) Case No: _____ |
| vs. | ) |
| | ) **JURY DEMAND** |
| **METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY** | ) |
| DEFENDANT. | ) |

# COMPLAINT

Plaintiff Cassietta Rogers ("Plaintiff" or "Mrs. Rogers"), by and through counsel of record, files her *Complaint* against the Metropolitan Government of Nashville and Davidson County. Plaintiff's allegations in this complaint are directed against her former employer, Metro Nashville Public Schools ("Defendant" or "MNPS"), a department of the Metropolitan Government of Nashville and Davidson County. Plaintiff alleges as follows:

## I. INTRODUCTION

1. This is a civil action to make whole the Plaintiff for denial and interference with the exercise of rights guaranteed by Title VII of the Civil Rights Act ("Title VII") and the Americans with Disabilities Act ("ADA"), including the right to be free from discrimination against her on account of Mrs. Rogers's religion, free from discrimination against her on account of her disability, and free from harassment in the workplace, and retaliation for opposition to unlawful actions.

1

## II. PARTIES

2. Plaintiff at all times relevant to this *Complaint,* resided in Hendersonville, Tennessee.

3. Defendant Metropolitan Government of Nashville and Davidson County is headquartered in Davidson county at the Nashville Metropolitan Courthouse at 1 public square suite 100, Nashville TN 37201.

4. Valid service of process may be obtained on Defendant by serving this complaint on the Legal Director at the Nashville Metropolitan Courthouse at 1 public square, square suite 100, Nashville TN 37201.

## III. JURISDICTION AND VENUE

5. Plaintiff brings this action under 28 U.S.C. § 1331, alleging the original jurisdiction of this Honorable Court over this private suit to enforce federal civil rights and employment law protections.

6. Venue is proper in the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful employment practices occurred within Davidson County, Tennessee, where Plaintiff formerly worked and where Plaintiff suffered the unlawful employment practices and resultant damages.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and did so within 300 days of the actions of which she complained. Plaintiff filed her Charge for violations of Title VII and the ADA on December 13th, 2023 (Charge No. 494-2024-00861). On June 12th, 2024, Plaintiff received her *Right to Sue Notice* from the EEOC for the aforementioned Charge and therefore concluded the process of exhaustion requirements with the EEOC. Accordingly, this lawsuit and supporting Title

VII and ADA claims are properly and timely filed within ninety (90) days of issuance by the EEOC of Plaintiff's Notice of Right to Sue Letter on June 12th, 2024. **(Exhibit 1, "Notice of Right to Sue").**

## V. STATEMENT OF FACTS

8. Plaintiff Cassietta Rogers has a doctorate degree in education and has been working in the education system for eleven (11) years.

9. On July 11, 2022, Mrs. Rogers was hired as Dean of students at Amqui Elementary School of MNPS located at 319 Anderson Lane, Madison, Tennessee.

10. Mrs. Rogers reported to her first-line supervisor, Latoya Cobb.

11. Mrs. Rogers employment term was contracted for a ten (10)-month period from July 11, 2022 to April 25, 2023, at the salary of $66,000.

12. Mrs. Rogers opted to modify her payment structure to be paid out over a twelve (12)-month period from July 2022 to July 2023, resulting in monthly payments of $5,500.

13. Mrs. Rogers's workday started at 7:45 AM and ended at 3:15 PM.

14. Mrs. Rogers performed the following tasks among others: Daily Behavior Walkthroughs, Classroom Management Support, Collecting Data for LiveSchool and behavior meetings, Positive Behavior Incentive System Administration, Bus duty, Academic and Overall Leadership Team responsibilities, Poster making for school, and Managing Tier 2 and 3 behaviors.

15. Typically, part of the day was in-office work, but the majority of the day was in classrooms or conference rooms depending on if there was a meeting.

16. Mrs. Rogers has no disciplinary records for her entire employment with MNPS.

17. On November 8, 2022, Mrs. Rogers filed a grievance concerning interactions with Amqui

3

elementary School (**Exhibit 2, "Confirmation of emailed grievance"**)

18. In that email, Mrs. Rogers told Mrs. Amber Tyrus, the HR manager, about a number of instances of discrimination and harassment.

19. In early September 2022, Mr. Johnathan Perdue took a report Mrs. Rogers had given him, ripped it to pieces, and then had to go to a neighboring teacher's room to sweep up the pieces off the floor.

20. Mr. Perdue was not given a write-up for the event described above.

21. On October 6, 2022, Mrs. Rogers was given verbal permission by Dr. Angela Burns, the Amqui Elementary Assistant Principal, not to return to school for an evening event after Mrs. Rogers requested to go home.

22. Mrs. Rogers was called on October 6, 2022, by Dr. Burns, and was told to return to school because Ms. Cobb wanted her there.

23. Mrs. Rogers returned to the school on October 6, 2022, and was confronted by Ms. Cobb on the front lawn. Ms. Cobb falsely accused Mrs. Rogers of leaving school early and changing appearance in a number of ways.

24. Ms. Cobb took a picture of Mrs. Rogers and sent it to Dr. Burns for review.

25. On October 19, 2022, Mrs. Rogers was brought into a meeting with Ms. Cobb and Dr. Burns. At that meeting, Ms. Cobb and Dr. Burns told Mrs. Rogers that her wedding ring was "too much" and that she needed to "tone it down."

26. Mrs. Rogers's wedding ring is a religious symbol of her marital commitment to her husband.

27. On November 4, 2022, Mrs. Rogers was called into the office to discuss a report written about her by Mr. Perdue. Ms. Cobb told Mrs. Rogers that she was not in the meeting on

4

November 3, 2022. Mrs. Rogers told Ms. Cobb that she was not at the meeting because she did not know it was confirmed.

28. Mr. Perdue was on sick leave until November 4, 2022.

29. After the meeting on November 4, 2022, Mrs. Rogers went home early due to illness, and notified the bookkeeper to tell Ms. Cobb. Ms. Cobb and Dr. Burns called Mrs. Rogers on the way home and requested that Mrs. Rogers meet Dr. Burns in front of a local workplace parking lot.

30. On November 4, 2022, Dr. Burns cursed at Mrs. Rogers and told her that if she did not return to the building, she was going to blow her entire career and that she needed to "get our of [her] feelings and tighten up," and that she better "get [her] shit together."

31. This meeting outside on November 4, 2022 took place in front of a business with customers and workers inside.

32. Mrs. Rogers returned to the school on November 4, 2022.

33. When Mrs. Rogers returned to school on November 4, 2022, Ms. Cobb berated her for fifteen (15) minutes and attacked Mrs. Rogers's character and age.

34. Because of this treatment, Mrs. Rogers began experiencing panic attacks, crying spells, night terrors, and tachycardia.

35. Mrs. Rogers was diagnosed with severe anxiety and depression (**Exhibit 3, "Medical Records to be filed following protective order"**).

36. In February 2023, Mrs. Rogers applied for ADA accommodation to be placed in a different work environment that is free of hostility and psychological harm while working in her current position as Dean of Students, including without modifications to the pay amount (**Exhibit 4, "Request for Accommodation"**).

37. During the MNPS transfer window of March 15, 2023, to May 15, 2023, Mrs. Rogers applied for open positions within the district.

38. Mrs. Rogers applied for the Dean of Students position, Dean of Instruction position, and Principal and Assistant Principal positions.

39. Mrs. Rogers received correspondence from MNPS indicating that her applications would not progress further for any of the positions she had applied for **(Exhibit 5, "MNPS Correspondence")**.

40. In March 2023, Mr. Harold Finch, the MNPS Director of Workplace Safety Office, dismissed Mrs. Roger's ADA application for accommodation, deciding that her mental illness diagnosis was not legitimate despite medical diagnoses by physicians.

41. Mr. Finch determined that the mental illness diagnosis was not legitimate, and instead caused by a personal conflict between Mrs. Rogers and Ms. Cobb and Dr. Burns.

42. MNPS modified Mrs. Roger's employment period from an eleven (11)-month to a ten (10)-month term and gave her position to another individual while Mrs. Rogers was still employed.

43. On May 10, 2023, Mrs. Rogers sent emails to multiple MNPS personnel regarding the ADA accommodation denial, which was considered by MNPS to be an appeal of the Workplace Safety Office's denial decision (**Exhibit 6, "ADA Accommodation Appeal"**).

44. On June 9, 2023, MNPS sent Mrs. Rogers a response letter indicating they found Ms. Cobb and Mr. Perdue engaged in inappropriate conduct (**Exhibit 7, "MNPS Response Letter"**).

45. On June 21, 2023, Mrs. Rogers received a certified letter from MNPS confirming that the investigation found that there was inappropriate conduct by Ms. Cobb and Mr. Perdue (**Exhibit 8, "Certified MNPS Letter"**).

46. On June 22, 2023, Mrs. Rogers received an email from MNPS Interim Chief of Human Resources, Ms. Spencer, who rejected her appeal of the ADA accommodation denial (**Exhibit 9, "ADA Accommodation Appeal Denial"**).

47. On August 1, 2023, Mrs. Rogers received a letter from MNPS Executive Director, Mr. Justin Uppinghouse, which notified Mrs. Rogers to return to active status with MNPS by August 4, 2023 (**Exhibit 10, "Letter to Return"**).

48. The August 1 letter also falsely stated that Mrs. Rogers did not apply for open positions during the MNPS transfer window.

49. On August 2, 2023, Mrs. Rogers emailed MNPS her letter of resignation (**Exhibit 11, "Letter of Resignation"**).

## VI. CAUSES OF ACTION

### Count 1

### Violation of Title VII–Religious Discrimination

50. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

51. Pursuant to Title VII, it is unlawful employment practice for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of religion.

52. Pursuant to Title VII, it is unlawful employment practice for an employer to limit her employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee because of religion.

53. Plaintiff's religion includes marriage as a sacrament.

54. Plaintiff's wedding ring symbolized the covenant bond and commitment to marriage.

55. Plaintiff was discriminated against because of her religion, and MNPS failed to reasonably accommodate Mrs. Rogers's religious observances or practices.

56. All that MNPS needed to do to was allow Mrs. Rogers to wear her wedding ring as a religious symbol without denial of that privilege or harassment from supervisors.

57. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, and inconvenience.

58. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count II**

**Violation of ADA/ADAA-Disability Discrimination**

59. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

60. Pursuant to the ADAAA, an individual is considered to have a disability if she has a physical impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such impairment.

61. Plaintiff has a disability that substantially limits her in one or more major life activities, including working and caring for herself.

62. Plaintiff could perform the essential functions of her job. Plaintiff made a request for reasonable accommodation, including, but not limited to, being in a work environment that is free of hostility and psychological harm or transferring to a new position. Plaintiff also requested consideration for positions for which she was qualified which would accommodate her disability.

63. Plaintiff was discriminated against and eventually forced to resign because of her disability and/or being regarded as disabled and/or request for a reasonable accommodation.

64. Plaintiff asserts that the reasons given by Defendant for denial of her ADA accommodation were pretextual excuses for Defendant's discriminatory basis for denial.

65. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, and inconvenience.

66. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count III

### Violation of TDA-Disability Discrimination

67. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

68. Plaintiff was disabled as defined by the TDA.

69. Plaintiff was a qualified individual with a disability and/or regarded as disabled.

70. Defendant discriminated against Plaintiff on the basis of her disability in violation of the TDA that culminated in her being denied accommodation for pretextual excuses.

71. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

72. As a result, Plaintiff is entitled to recover his damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count IV

### Violation of Title VII- Harassment

73. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

74. Harassment is unwelcome conduct that is based on race, color, religion, sex, or national origin. It becomes unlawful where enduring offensive conduct becomes a condition of continued employment or the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

75. Mrs. Rogers had to endure verbal assaults or threats, ridicule, mockery, and insults in the workplace due to her religion.

76. Mrs. Rogers's supervisors were the people who harassed her.

77. Defendant harassed Plaintiff in violation of Title VII.

78. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

79. As a result, Plaintiff is entitled to recover his damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count IV

### Retaliation in Violation of Title VII and ADA

80. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

81. Plaintiff is protected from retaliation under Title VII and the ADA.

82. Retaliation under Title VII or the ADA takes place when an "adverse employment action" is levied against the employee, such as demotion, lowering of pay, or termination.

83. In accordance with 6th circuit case law, Plaintiff's work environment was so intolerable that Mrs. Rogers was forced to resign.

84. Accordingly, Mrs. Rogers was constructively terminated, and was therefore retaliated against in violation of Title VII and the ADA.

85. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## VII. RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits, insurance and actual damages;

3. Front pay;

4. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

5. Liquidated damages;

6. Punitive damages;

7. Attorneys' fees and expenses;

8. Prejudgment interest and, if applicable, post-judgment interest; and

9. Such other and further legal or equitable relief to which she may be entitled under Title VII, the ADA/ADAA and any other statutory or common law.

## VIII. TRIAL BY JURY

Plaintiff respectfully demands a trial by jury on all issues.

**Respectfully submitted,**

/s/Adam Rodrigues
Adam Rodrigues, BPR#040141
Adam Rodrigues Law PLLC
4183 Franklin Rd. Ste B1 Box 209
Murfreesboro, TN 37128
Tel: 615-270-2074
Fax: 615-709-5770
adam@adamrodrigueslaw.com